**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

WILLIAM CHARLES CLAYBORNE,[1]
  #368-289,                          *

Petitioner,                     *

v.                                 *         Civil Action No. PWG-16-1024

WARDEN, *et al.*,            *

Respondents.             *
                                 ***

## MEMORANDUM OPINION

Pending before the Court is Petitioner William Charles Clayborne's Petition for Writ of Habeaus Corpus arising out of his January 2011 conviction for the murder of Zachary Thompson.  Among other things, Clayborne attacks the conviction because he claims that his waiver of a unanimous verdict was not knowing and voluntary.  Respondents have filed a Limited Answer to the Petition, asserting that Clayborne raised unexhausted claims not subject to substantive federal habeas corpus review. Ltd. Answer, ECF No. 9.  I granted Clayborne an opportunity to respond, ECF No. 10, which he has done, Pet'r's Reply, ECF No. 11; Pet'r's Supp. Reply, ECF No. 12.  The Court has reviewed the filings, and no hearing is necessary.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; 28 U.S.C. § 2254(e)(2).  For the reasons set forth below, the Petition shall be denied as to all claims except for the claim related to the waiver of a unanimous verdict.

## Background

In January 2011, a Circuit Court for Baltimore City jury convicted Clayborne of

---

[1] Petitioner's name appears in the record as both "William Claybourne" and "William Clayborne."

first-degree murder. *Claybourne v. State*, 61 A.3d 841, 844 (Md. Ct. Spec. App. 2013). The circumstances surrounding the verdict were unusual. During deliberations, the jury could not reach a unanimous decision. *Id.* at 848. Clayborne waived his right to a unanimous verdict, and he and the State agreed to accept a majority verdict. *Id.* at 849–51. The jury found Clayborne guilty of first-degree murder by an eleven-to-one vote and of unlawfully carrying a dangerous weapon by a unanimous vote. *Id.* at 851. Clayborne was sentenced to life imprisonment with all but 25 years suspended. *Id.*

On direct appeal, Clayborne raised three claims:

1. Was his waiver of his right to a unanimous verdict knowing and voluntary?

2. Did the trial court abuse its discretion when it permitted testimony that one of the State's key witnesses had expressed concerns about her safety?

3. Under the "facts of the case" doctrine, was the evidence insufficient to sustain Clayborne's conviction for openly carrying a dangerous weapon?

*Id.* at 845. The Maryland Court of Special Appeals affirmed the conviction. *Id.* at 867. Clayborne filed a Petition for Writ of Certiorari raising the same questions, and the Maryland Court of Appeals denied further review. *Claybourne v. State*, 68 A.3d 286 (Md. 2013).

While his certiorari request was pending, Clayborne filed a petition for post-conviction relief in the Circuit Court for Baltimore City. Cir. Ct. Balt. City Docket 12, ECF No. 9-1. He later withdrew that petition, *id.* at 14, but filed a second post-conviction petition on June 17, 2014, *id.* at 15, 18. The Petition for Post-Conviction Relief alleged ineffective assistance of trial counsel for: (1) objecting to a cautionary instruction; (2) failing to move for judgment of acquittal following the State's case; (3) failing to challenge inconsistent verdicts; (4) failing to interview alibi witnesses; (5) failing to seek suppression of State's witness Valerie Leak's testimony or demand that she undergo a psychiatric examination; (6) failing to move to suppress

evidence; (7) failing to move for disclosure of criminal records of the State's witnesses; (8) failing to handle DNA evidence properly; (9) failing to request an instruction on involuntary manslaughter due to hot-blooded response; (10) failing to investigate impeachment evidence of Valerie Leak; (11) failing to consult with Clayborne about filing a motion for modification of his sentence; and (12) failing to address the rule which requires a court to read all contents of any jury communication to both parties. Cir. Ct. Balt. City Docs. 11–12, ECF No. 6-5.[2] The Petition also alleged ineffective assistance of appellate counsel for failing to allege that insufficient evidence was presented to support the convictions. *Id.* at 12. Finally, the Petition alleged prosecutorial misconduct for: (1) presenting noncredible witnesses; (2) making improper remarks; and (3) presenting false evidence. *Id.* at 11.

The post-conviction court granted Clayborne's request to file a belated request for modification of his sentence but denied all other relief. *Id.* at 39.[3] Clayborne did not file a timely application for leave to appeal the denial of post-conviction relief.[4] Instead, he sought federal habeas corpus review within the one-year limitations period provided by 28 U.S.C. § 2244(d)(1). *See* Pet., ECF No. 1.

Clayborne's Petition, as supplemented, sets forth a number of grounds for relief that: (A) the verdict was inconsistent; (B) his waiver of an unanimous verdict was not knowing and intelligent; (C) the trial court failed to give an instruction on voluntary manslaughter; (D) witness

---

[2] Page number for citations to the Circuit Court for Baltimore City documents refer to the CM/ECF page numbers.

[3] Clayborne later filed a Motion for Modification, which was denied. *Id.* at 8–9.

[4] The post-conviction court rendered its decision on October, 23, 2015. Accordingly, the proceedings became final on November 22, 2015. *See* Md. Code Ann., Crim. Proc. § 7-109(a). On February 16, 2016, the Court of Special Appeals dismissed Clayborne's untimely application for leave to appeal. Md. Ct. Spec. App. Feb. 18, 2016 Order, ECF No. 9-5.

testimony amounted to hearsay; (E) the photographic identification array was suggestive; (F) the police and prosecutor falsified DNA evidence; (G) there was no evidence of premeditated murder; (H) prosecution witness Angela Gibbs's trial testimony was not credible; (I) the prosecutor committed misconduct by suggesting that Gibbs was afraid of Clayborne;   (J)   a murder weapon was never found; (K) prosecution witness Valerie Leak was incompetent; (L) newly discovered evidence not previously disclosed by the State and obtained under the Maryland Public Information Act ("MPIA"), Md. Code Ann., State Gov't § 10-611 to -628, shows all witnesses presented perjured and inconsistent testimony; (M) although he responded in the negative at trial, Clayborne was in fact on psychiatric medication at the time of trial; and (N) the trial court failed to properly instruct the jury as to reasonable doubt.  Pet. 1–2; First Supp. Pet. 6, 22, ECF No. 3; Second Supp. Pet. 8–12, 14–15, ECF No. 5; Third Supp. Pet. 2–3, ECF No. 6; Pet'r's Reply 1; Pet'r's Supp. Reply 4.[5]

## Discussion

### Exhaustion

Respondents argue that the Petition must be dismissed because it contains exhausted claims.  Habeas petitioners must exhaust available state remedies before seeking relief in federal court.  28 U.S.C. § 2254(b)(1), (c).  In *Rose v. Lundy*, 455 U.S. 509 (1982), the Supreme Court held that the habeas statute's exhaustion requirement is one of "total exhaustion," meaning that petitions that contain both exhausted and unexhausted claim (i.e. "mixed petitions") are not entitled to federal habeas review.  *Id.* at 522; *see also Granberry v. Greer*, 481 U.S. 129, 134–35 (1987) (recognizing that the exhaustion requirement is not a jurisdictional prerequisite to federal

---

[5] Page numbers for citations to the Petition, as supplemented, and the Reply, as supplemented — which contain additional allegations that I will construe as raised in the Petition—refer to the CM/ECF page numbers.

habeas corpus relief, but rather a matter of comity).   State-court remedies are also exhausted if they once were but are no longer available.  *Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006).  Although Maryland permits an individual to file only one post-conviction petition per trial or sentence, Md. Code Ann., Crim. Proc, § 7-103, the state allows a court to "reopen a post-conviction proceeding that was previously concluded if the court determines that the action is in the interests of justice,"  Md. Code Ann., Crim. Proc. § 7-104.  Accordingly, a prisoner who raises new claims in a habeas petition may yet have state remedies available to him, even if he has previously filed a petition for post-conviction relief in state court.  *Stokes v. Bishop*, No. RDB-12-840, 2014 WL 1320139, *3 (D. Md. Mar. 27, 2014).

Clayborne's claim concerning waiver of a unanimous verdict (ground B) was presented on direct appeal and in Clayborne's Petition for Certiorari to the Court of Appeals, *Claybourne*, 61 A.3d at 845; Pet. Writ Cert. 1, ECF No. 9-4.[6]  This ground is fully exhausted.  But it appears that Clayborne did not raise grounds (D), (E), (F), (J), (L), (M), or (N) in either his direct appeal or in his Petition for Post-Conviction Relief.  *See Claybourne*, 61 A.3d at 845; Cir. Ct. Balt. City Docs. 11–12.  Thus, Clayborne presents a "mixed" petition.

As a result, Respondents argue that the Petition must be dismissed.  Ltd. Answer 11–12.  But a "mixed" petition may proceed if the petitioner withdraws his unexhausted claims.  *Rose*, 455 U.S. at 520 (noting that a habeas petitioner "can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims"); *Guthrie v. Warden*, 683 F.2d 820, 821 n.1 (1982) ("[E]xplicit abandonment of . . . unexhausted claims early in the case is the functional equivalent to an amendment of [the] petition.  Like a formal amendment, such an express withdrawal purge[s] the petition of the unexhausted claims.").  In

---

[6] Page numbers for citations to the Petition for Writ of Certiorari refer to the CM/ECF page numbers.

his Reply, Clayborne indicates that if the Court finds any of his claims unexhausted that he would "withdraw from the reopening of . . . post conviction proceedings." Pet'r's Reply 1. Accordingly grounds (D), (E), (F), (J), (L), (M), and (N) will be treated as "purged" from the Petition, and dismissal is not required. *Guthrie*, 683 F.2d at 821 n.1.

Procedural Default

Clayborne raised the remaining grounds for habeas relief—(A), (C), (G), (H), (I), and (K)—in his Petition for Post-Conviction Relief. Cir. Ct. Balt. City Docket 11–12. But after the post-conviction court denied relief for all but one of his claims, Clayborne did not file a timely appeal. Md. Ct. Spec. App. Order (dismissing application for leave to appeal pursuant to Md. Rule 8-602(a)(3), which authorizes dismissal for failure to file an appeal within the time limit prescribed by the Rules). Accordingly, these claims are technically exhausted. *Woodford*, 548 U.S. at 92–93 (noting "state-court remedies are "technically exhausted" where "the prisoner failed to comply with the deadline for seeking state-court review or for takin an appeal of those remedies" but that the claims may nevertheless be barred under procedural-default doctrine).

The appellate court's dismissal of Clayborne's post-conviction appeal would seem to fall squarely within the procedural-default doctrine. This judicially-crafted rule generally prohibits habeas review where "the last state court rendering a judgment in the case rests its judgment on [a] procedural default." *Harris v. Reed*, 489 U.S. 255, 262 (1989). Although the Limited Answer does not raise procedural default as basis for dismissal of any of the asserted grounds for relief, *see* Ltd. Answer, "a federal habeas court possesses the authority, to decide a petitioner's claim on the basis of procedural default despite the failure of the state . . . to preserve or present the issue properly." *Yeats v. Angelone*, 166 F.3d 255, 261–62 (4th Cir. 1999). Particularly since Clayborne has preemptively addressed the issue, *see* Pet'r's Supp. Reply 2–3, I will consider

whether habeas review is warranted for grounds (A), (C), (G), (H), (I), or (K).

Where, as here, a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495–96 (1986); *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998).

"Cause" consists of "some objective factor external to the defense [that] impeded [the petitioner's] efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). Clayborne addresses this element by stating that his self-represented application for leave to appeal the denial of post-conviction relief was sent in error directly to the Court of Special Appeals without first seeking permission from the post-conviction court, and thus deemed untimely. Pet'r's Supp. Reply 2–3. Clayborne's lack of legal knowledge is not sufficient "cause" for the default.[7] *Wilson v. Johnson*, No. 1:08cv794 (LMB/TRJ), 2009 WL 2243708, *3 (E.D. Va. July 22, 2009) ("Courts universally hold that the fact that a petitioner is untrained in the law or unfamiliar with a court's procedural rules does not provide a basis for establishing cause.").

Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995). "Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror

---

[7] Absent cause, I need not examine the issue of prejudice.

could not have convicted the petitioner in light of the new evidence." *See Buckner v. Polk*, 453 F.3d 195, 199–200 (4th Cir. 2006). Clayborne contends that previously undisclosed information obtained under the MPIA shows that witnesses' trial testimony deviated significantly from earlier statements to the police. Pet'r's Supp. Reply 4. He suggests that tapes exist to substantiate his claim that witnesses "Ella Green" and "Valerie Leaks," who I take to be witnesses Valerie Leak and Ella Gregg, "both gave statements to detectives that someone else committed this crime," but he has not supplied evidence to support this claim.[8] *Id.* at 5.

Clayborne has only provided me with photocopies of CDs that contain this purportedly exculpatory information but has not provided the CDs themselves for review. But even if the CDs back up his claims, Clayborne cannot prove by a preponderance that no reasonable juror would have convicted him in light of this information. Although Leak and Gregg were key witnesses in the trial, *see Claybourne*, 61 A.3d at 845–46, 847, the State also produced a statement from Angela Gibbs identifying Clayborne as the murderer, *id.* at 846–47. Gibbs recanted the statement at trial, but the State attempted to impeach her trial testimony by eliciting testimony that she had asked to go into witness protection after giving the statement. *Id.* at 847. Additionally, a forensic examiner provided DNA evidence linking Clayborne to the crime and estimated that "the chances that an unrelated individual in the African American population could have been a contributor to [a] mixture [of the victim and the assailant's DNA] was approximately one in 34.2 million." *Id.* at 847–48. Although Clayborne argues that the court erred by permitting testimony concerning Gibbs's safety concerns, the Maryland Court of Appeals disagreed. *Id.* at 862. Clayborne also insists that the DNA results "were falsified,"

---

[8] Clayborne claims he provided the evidence to his former counsel, Melissa McDonnell, of the Maryland Public Defender's Office, Collateral Review Division. Pet'r's Supp. Reply 5. McDonnell will be provided a courtesy copy of this Opinion in the hope that any relevant material in her possession will be promptly returned to Clayborne.

Pet'r's Reply 4, but as I already indicated, he has failed to exhaust that claim and has waived consideration of it.   I find that a reasonable juror could have convicted Clayborne based on Gibbs's statement and the DNA evidence.   Accordingly, the remaining grounds for relief for relief are procedurally defaulted and will not be considered.

## Conclusion

Clayborne's claim that his waiver of a unanimous verdict was not knowing and voluntary is exhausted, and Respondents shall answer the merits of that claim.   The remaining claims are either unexhausted and withdrawn or are procedurally defaulted.

A separate Order follows.

Date: <u>March 22, 2017</u>                           _____/S/_____

Paul W. Grimm
United States District Judge