# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

WILLIAM CHARLES CLAYBORNE,[1]  *
  #368-289,
                                      *

    Petitioner,
                                     *

v.                                               Civil Action No. PWG-16-1024
                                     *

WARDEN, *et al.*,
                                     *

    Respondents.
                                     ***

## MEMORANDUM OPINION

Pending before the Court is Petitioner William Charles Clayborne's 28 U.S.C. § 2254 petition. Pet., ECF No. 1. His remaining claim[2] is that his waiver of a unanimous verdict was not knowing and voluntary. Respondents filed a Supplemental Response as to that claim. Supp. Resp., ECF No. 16. I have reviewed the filings, and no hearing is necessary. *See* Loc. R. 105.6. For the reasons set forth below, the Petition shall be denied, and the case dismissed.

## Background

As noted more fully in my March 22, 2017 Memorandum Opinion, ECF No. 14, a Circuit Court for Baltimore City jury convicted Clayborne of first-degree murder. *Claybourne v. State*, 61 A.3d 841, 844 (Md. Ct. Spec. App. 2013). During deliberations, the jury could not reach a unanimous decision. *Id.* at 848. Clayborne waived his right to a unanimous verdict, and he and the State agreed to accept a majority verdict. *Id.* at 849–51. The jury found Clayborne guilty of first-degree murder by an eleven-to-one vote and of unlawfully carrying a dangerous weapon by

---

[1] Petitioner's name appears in the record as both "William Claybourne" and "William Clayborne."

[2] Previously, I denied all Clayborne's claims except his challenge to the voluntariness of his decision to waive his right to a unanimous verdict. March 22, 2017 Mem. Op., ECF No. 14.

a unanimous vote. *Id.* at 851. Clayborne was sentenced to life imprisonment with all but 25 years suspended. *Id.*

On direct appeal, Clayborne raised three claims:

1. Was his waiver of his right to a unanimous verdict knowing and voluntary?

2. Did the trial court abuse its discretion when it permitted testimony that one of the State's key witnesses had expressed concerns about her safety?

3. Under the "facts of the case" doctrine, was the evidence insufficient to sustain Clayborne's conviction for openly carrying a dangerous weapon?

*Id.* at 845. The Maryland Court of Special Appeals affirmed the conviction. *Id.* at 867. Clayborne filed a Petition for Writ of Certiorari raising the same questions, and the Maryland Court of Appeals denied further review. *Claybourne v. State*, 68 A.3d 286 (Md. 2013).

**<u>Standard of Review</u>**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a highly deferential standard for evaluating state-court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet" and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 134 S. Ct 1697, 1702 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) resulted in a decision that was contrary to, or involved an unreasonable application

2

of, clearly established federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) if the state court: 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).

## Analysis

In *Apodaca v. Oregon*, 406 U.S. 404, 406, 410–12 (1972), the Supreme Court held that a state law providing that a criminal defendant could be convicted by a non-unanimous verdict did not violate the Sixth Amendment, applicable to the states via the Fourteenth Amendment. Consequently, neither the Sixth nor the Fourteenth Amendments is abridged when a defendant consents and waves the right to a unanimous verdict. *See Maryland v. McKay*, 375 A.2d 228, 232 (Md. 1977).[3]

The Court of Special Appeals of Maryland fully considered the merits of Clayborne's claim that he did not knowingly and voluntarily waive his right to an unanimous jury verdict, and rejected it, stating, in part:

> In the instant case, appellant, against the advice of counsel, express[ed] his wish to waive his right to a unanimous verdict and accept the majority verdict. As a consequence, appellant's counsel and the trial court engaged in an extensive waiver inquiry with appellant. The waiver inquiry included questions relating to

---

[3] Petitioner asserts that a unanimous verdict "cannot be waived in capital" cases. Pet. 2. Petitioner is correct in his assertion. *See State v. McKay*, 280 Md. 228, 232 (1977) ("[N]either the Sixth nor the Fourteenth Amendment is offended by a state constitutional provision imposing less-than-unanimous verdicts in all but capital cases . . . ."). But Petitioner's case was not a capital case because the State did not seek a sentence of death. *See* Md. Code Ann., Crim. Law § 2-202 (repealed by Acts 2013, c. 156, § 3 (2013)) ("A defendant found guilty of murder in the first degree may be sentenced to death *only if at least 30 days before trial, the State gave written notice to the defendant of the State's intention to seek a sentence of death.*") (emphasis added); Docket Sheet, ECF No. 9-1 (indicating that the State did not seek a sentence of death).

appellant's capacity to make a voluntary decision and ruled out the possibility of drugs, alcohol, and mental illness or impairment. To ensure appellant's understanding of his selection, his counsel not only advised appellant regarding the meaning of an unanimous verdict, he further informed appellant of his constitutional right to that unanimous verdict:

> [APPELLANT'S COUNSEL]: Okay. Just in case and so that the record is clear, a unanimous verdict means that all 12 of the jurors have to decide, either one way or another beyond a reasonable doubt that you're guilty or not guilty, based on the evidence that they received. Do you understand that?
>
> [APPELLANT]: Yes.
>
> [APPELLANT'S COUNSEL]: And that's your absolute Constitutional Right to have a unanimous verdict by a jury of your peers. Do you understand that?
>
> [APPELLANT]: Yes.

All of the jury's communications to the court were properly disclosed to the parties, including the communication which prompted appellant to request a majority verdict. Even though the jury's communication did not indicate the nature of the eleven to one split, the judge explicitly cautioned appellant of the court's belief that the majority likely favored appellant's conviction:

> THE COURT: Now, I will be very frank with you. I believe and no one can predict this, but I believe that the jury is weighted toward convicting you and I believe that by doing this, you are going to get a conviction of at least some counts in this case. Do you understand that?
>
> [APPELLANT]: Yes.
>
> THE COURT: All right. So, you're taking—you realize that you're taking the chance that the 11 to one might be in your favor or it might be against you?
>
> [APPELLANT]: Yes.

After appellant's counsel further noted on the record his disapproval of his client's selection and advised appellant against the requested waiver, the trial court additionally cautioned appellant of the risk involved in making such a selection:

> [APPELLANT'S COUNSEL]: Now, and you understand that I have advised you to wait for a unanimous verdict; correct?
>
> [APPELLANT]: Yes.

\* \* \*

> THE COURT: And you understand you're giving up the possibility that it would be a hung jury and risking the chance that it will be a conviction?
>
> [APPELLANT]: Yes.
>
> THE COURT: And you realize that on a conviction in this case, you face a substantial amount of incarceration?
>
> [APPELLANT]: Yes.

Notwithstanding the advisement by both the court and counsel that accepting a majority verdict could lead to a conviction by less than a unanimous jury and that such a conviction would result in a substantial period of incarceration, appellant's concern regarding the possibility of a hung jury was the length of time that would lapse between the court's finding of a mistrial and his retrial.

> [APPELLANT]: For example, like the hung jury, how long would it actually take if it was a hung jury to get back to trial?
>
> THE COURT: To get back for retrial?
>
> [APPELLANT]: Yeah.
>
> THE COURT: Your case would be sent back to postponement court. The court would have to schedule a new trial date. I can't predict that exactly, but I would guess that it's going to be at least a matter of months, if not closer to a year.
>
> [APPELLANT]: Okay. That's long.

Appellant never suggested that he was concerned with the length of time he would remain incarcerated if he had been acquitted. In fact, appellant informed the court that he wished to waive his right to a unanimous verdict, and, alternatively opt for a majority verdict, because he believed the jury was headed toward an acquittal:

> THE COURT: Are you proceeding because of—with this waiver because you simply don't want to be held in jail any longer?

>[APPELLANT]: No, it's not that. It's—I just have strong beliefs in the jury right now as far as—you know what I mean? And I—
>
>THE COURT: So, you think that the jury is heading toward acquittal?
>
>[APPELLANT]: Yes.
>
>THE COURT: All right. And you wish to take that chance?

Thus, his dialogue with the court demonstrated an understanding that an acquittal would not result in a retrial of the same criminal charges. Appellant clearly understood that an acquittal would bar the State from retrying the case, otherwise he would not have had any incentive to accept a majority verdict in the first place.

A review of the record leads to the conclusion that appellant's choice to waive his right to a unanimous verdict was based solely on his opposition to a lengthy delay prior to his retrial in the event of a hung jury and prior to any right to appeal should retrial result in a conviction. Indeed, appellant's only concern if the majority verdict resulted in a conviction was whether he maintained an absolute right to appeal:

> [APPELLANT'S COUNSEL]: And as a matter of fact, just to continue to make the record clear, you have—your largest or biggest concern was if you agree, which you are agreeing to accept this majority verdict, your biggest concern is if it's a guilty verdict, you're worried that you can still appeal this case; correct?
>
> [APPELLANT]: Yes.

Out of an abundance of caution, his counsel further advised:

> [APPELLANT'S COUNSEL]: And I have explained to you that yes, you can. You have an automatic and absolute right of appeal, but that's why His Honor is making the record clear here today that you're waiving your right to that unanimous verdict and it's unlikely you would be able to win a reversal on the fact that the Court accepted a non-unanimous verdict. Do you understand that?
>
> [APPELLANT]: Yes.

Despite counsel for appellant's advisements, the court's cautionary explanation, and the appellant's clear understanding of the risks involved; the appellant still chose to place his faith in the jury's decision. Therefore, appellant's elimination of a hung jury provided appellant what he desired: avoidance of an unwanted

7

delay to any potential appellate review in the event that he was convicted rather than acquitted. Accordingly, we conclude that appellant competently and intelligently accepted a majority verdict; and, thus, appellant's waiver to a unanimous verdict was valid.

*Claybourne*, 61 A.3d at 857–59. The state appellate court's rulings are presumptively correct, *see* 28 U.S.C. § 2254(e)(1), and, beyond any doubt, are well supported by the record. As noted by Respondents, "there is no dispute . . . that the right to an unanimous verdict may be waived. The only dispute is whether Clayborne's waiver was valid." Supp. Resp. 11. Clayborne was painstakingly advised by both counsel and the trial court of the likely consequences of his actions, and his waiver of a unanimous verdict was competently made.[4] The state intermediate appellate court's determination that the wavier was completely knowing and voluntary was reasonable and survives scrutiny under 28 U.S.C. § 2254(d).

## Conclusion

When a district court dismisses a habeas petition on substantive grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rouse v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. Daniel*, 529 U.S. 473, 484 (2000)). The denial of a certificate of appealability does not preclude a petitioner from seeking permission to file a successive petition or from pursuing his claims

---

[4] Petitioner argues that the verdict was inconsistent because the court instructed the jury that it must find him guilty of the weapon charge if it found him guilty of the murder charge. Pet. 1–2. Petitioner argues that since one juror found him guilty of the weapon charge but not guilty of the murder charge, the verdict violates the court's instruction. *Id.* Petitioner's argument does not comport with the court's instruction. While one juror may have believed Clayborne to be not guilty of the murder charge, the court, correctly, found that Clayborne had clearly waived his right to a unanimous verdict, and Clayborne was found guilty of both charges by the collective jury. As such, neither the jury's verdict nor the juror's not guilty vote violated the court's instructions.

8

upon receiving such permission.  Because Clayborne has not made a substantial showing of the denial of his constitutional rights, this court will not issue a certificate of appealability.  *See Buck v. Davis*, 137 S. Ct. 759, 773 (2017).

A separate Order shall be entered in accordance with this Memorandum Opinion.


Dated: August 29, 2017 _____/S/_____
Paul W. Grimm
United States District Judge